**MATTHEW Q. CALLISTER, ESQ.**
Nevada Bar No. 001396
mqc@call-law.com
**BROOKE A. BOHLKE, ESQ.**
Nevada Bar No. 009374
bab@call-law.com
**CALLISTER + ASSOCIATES, LLC**
823 Las Vegas Blvd. South, 5th Floor
Las Vegas, NV 89101
Telephone No.: (702) 385-3343
Facsimile No.: (702) 385-2289
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LUIS ARMANDO BENITO, RAYMOND BISSAILLON, BEOP CHUON, NORMAN TATE, CARLOS PADILLA VELASCO, ELENA WOODARD, STEVE AYRES, JAMES BAILEY, CESAR COVELLI SR., VALERIE DUNLAP, PERRY ESCOBAR, FIROUZEH FOROUZMAND, MARLEN GARCIA, ANTOINETTE GILL, ROBERT GRIEBEL, DORINE HORVATH, LUCY LOU, MATTHEW MOORE, MARIA PARRA, MARK SANDERS, ANTHONY SUGGS, AND MICHAEL ZANG, Does Plaintiffs 1-100. <br><br> Plaintiffs, <br><br> vs. <br><br> INDYMAC MORTGAGE SERVICES, a Division of ONEWEST BANK FSB and DOES and I through X, inclusive; and ROE COMPANIES I through X, inclusive, <br><br> Defendants. | Case No.:    2:09-cv-01218 <br><br> **RESPONSE TO MOTION FOR SUMMARY JUDGMENT AS TO CO-PLAINTIFFS CESARE COVELLI SR., PERRY ESCOBAR, FIROUZEH FOROUZMAND, MARLEN GARCIA AND MARIA PARRA** <br> **AND** <br> **COUNTER-MOTION AND REQUEST FOR JUDICIAL REVIEW AS TO PLAINTIFF MARLEN GARCIA** |

COMES NOW, Co-Plaintiffs CESARE COVELLI SR., PERRY ESCOBAR, FIROUZEH

FOROUZMAND, MARLEN GARCIA AND MARIA PARRA, by and through their attorneys of

record, the law firm of CALLISTER + ASSOCIATES, LLC, and hereby files this Response to

1  Defendants' Motion for Summary Judgment and Counter-Motion and Request for Judicial Review
2  as to Marlen Garcia.

3     This Response and Counter-Motion are based upon the attached memorandum of points and
4  authorities, exhibits, all papers and pleadings already on file in this matter, and any oral argument
5  made in the event of a hearing of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**
**INTRODUCTION**

9     Defendant, INDYMAC MORTGAGE SERVICES, a Division of ONEWEST BANK FSB
10  (hereinafter "OneWest") has filed a Motion for Summary Judgment against the named Co-Plaintiffs
11  CESARE COVELLI SR., PERRY ESCOBAR, FIROUZEH FOROUZMAND, MARLEN GARCIA
12  AND MARIA PARRA (hereinafter collectively referred to as "Plaintiffs"), predicated upon the
13  notion that OneWest is not liable to the Plaintiffs because: (1) Plaintiffs' claims are allegedly barred
14  by the administrative review process; (2) OneWest did not originate any of Plaintiffs' loans; (3)
15  OneWest allegedly cannot be held liable for failure to properly service Plaintiffs' loans, specifically
16  pertaining to loan modifications; and (4) Plaintiffs' claims for wrongful foreclosure are not ripe at
17  this time.

18     Stated very simply, questions of fact exist which preclude Defendant's Motion. Further,
19  Defendants' claims in the instant Motion for Summary Judgment fly in the face of the very clear
20  language of NRS § 598D. The provisions of NRS § 598D statutorily transfers the liability of a
21  predecessor lender to the current lender, which in this case is OneWest. As will be discussed more
22  fully below, the instant Motion for Summary Judgment should be denied.[1]

23     Moreover, regarding the specific Plaintiffs named in the Motion, as the situation stands,
24  Maria Parra ("Parra") filed for bankruptcy protection on January 22, 2010, and as such, the automatic

25

26     [1] As will be discussed more fully below, Plaintiffs stipulate and agree that the ninth cause of action
    for deceptive trade practices may be dismissed. Further, Plaintiffs' fifth and seventh causes of action
27  for wrongful foreclosure and slander of title do not relate to the Plaintiffs which this motion is directed
    at. Therefore, the fifth and seventh causes of action may be dismissed as to Cesare Covelli Sr., Perry
28  Escobar, Firouzeh Forouzmand, Marlen Garcia and Maria Parra, only.

1  stay associated therewith prevents adjudication of this Motion as to her claims.

2       Plaintiffs' counsel has been unable to contact Cesare Covelli, Sr. ("Covelli") for a substantial
3  period of time, and as such, no representation can me made as to Covelli's claims.  Moreover,
4  Plaintiffs' Counsel has filed a Motion to Withdraw. [See Document Nos. 60 & 61].

5       Perry Escobar ("Escobar") was granted a loan modification by OneWest on Wednesday,
6  January 20, 2010, thereby both complying with HAMP and satisfying Escobar's claims in this
7  action.

8       Regarding Marlen Garcia ("Garcia"), OneWest failed to attend the HAMP mediation with
9  Garcia, thereby preventing a grant of the instant Motion for Summary Judgment and triggering
10 Garcia's Counter-Motion for Judicial Review, which will be filed concurrently with this instant
11 Response.

12      Last, OneWest has argued that Firouzeh Forouzmand ("Forouzmand") has refused a loan
13 modification in the past.  However, although Forouzmand's counsel has requested that document on
14 several occasions, it has never been disclosed.  Therefore, whether or not the proposed loan
15 modification was adequate or even complied under HAMP is not known.

16      Summary Judgment against the subject Plaintiffs, based upon the common facts of this case,
17 as well as the Plaintiff-specific facts for each individual addressed above, should be denied.

## II.

## STATEMENT OF PERTINENT FACTS

### A.    BACKGROUND OF THE BENITO I² ACTION.

Plaintiffs, Luis Benito, Raymond Bissaillon, Boep Chun, Carlos Padilla Velasco, Norman Tate, and Elena Woodard,  previously filed a lawsuit against Indymac Bank FSB  on or about March 9, 2009 and sought injunctive relief to stop the foreclosures and evictions, where the bank made unlawful loans from 2003 through present.  The lawsuit was further brought based upon Indymac

---

² Defendant refers to a Benito I lawsuit as the lawsuit brought solely by Plaintiffs, Luis Benito, Raymond Bissaillon, Boep Chun, Carlos Padilla Velasco, Norman Tate, and Elena Woodard.  This lawsuit was originally filed in the Eighth Judicial District Court.  The case was subsequently removed to Federal Court and was assigned Case No. 2:09-cv-00659-RLH-LRL.

1  Bank FSB's breach of good faith and fair dealing in serving the loans.

2      In that case, all Plaintiffs had requested financial assistance through hardship letters and
3  telephone calls to Indymac Bank FSB. Plaintiffs were forced to spend hours on the phone or hire
4  third party mortgage negotiators to assist them.

5      However, Indymac Bank FSB refused to negotiate with the Plaintiffs to reduce their
6  payments and/or modify their loans. For that reason, a lawsuit was necessary.

7      Unbeknownst to Plaintiffs, while Plaintiffs were having their extreme difficulties with
8  Indymac Bank FSB, the bank had gone into a Receivership and their assets were transferred, sold or
9  assigned to OneWest on March 19, 2009, (which includes Plaintiffs' loans collateralized with
10  Plaintiffs' real property). By way of background, on July 11, 2008, Indymac Bank, FSB was closed
11  by the Office of the Thrift Supervision, and the Federal Deposit Insurance Corporation ("FDIC") was
12  appointed receiver. *See Exhibit 1.*

13      On March 19, 2009, the servicing of all Indymac Bank FSB loans, specifically, the right to
14  collect payments from Indymac Bank FSB's clients (such as Plaintiffs) was assigned, sold, or
15  transferred from Indymac Bank FSB to Indymac Mortgage Services, a division of OneWest Bank,
16  FSB (hereinafter "OneWest"). *See Exhibit 1.*

17      According to the "Notice of Assignment, Sale or Transfer of Servicing Rights:" "This
18  assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or
19  condition of the mortgage documents, other than terms directly relating to the servicing of your
20  loan."

21      Therefore, the necessary party that an injunction needed to be filed against was OneWest,
22  not Indymac Bank FSB.

23      Information about OneWest's ownership of Plaintiffs' loans was only discovered and made
24  available to the public on or about May 2009.

25      The Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for Indymac
26  Bank FSB requested a 90 day stay and/or dismissal of the lawsuit, claiming that the Plaintiffs needed
27  to exhaust their administrative remedies. [See Document No. 18.]

28      Plaintiffs argued that after filing suit against Indymac Bank, FSB, Plaintiffs were emailed a

LLISTER + ASSOCIATES
23 Las Vegas Blvd, South
Fifth Floor
Las Vegas, NV 89101

4

1   "Notice from FDIC as Deposit Insurer and as Receiver of Indymac Bank, F.S.B. Improper Service of

2   Litigation" (hereinafter the "Notice") on April 3, 2009. *See Exhibit 2.* The Notice specifically states

3   that the time for filing administrative claims against the Receiver ***expired on October 14, 2008.*** *See*

4   *Exhibit 2 at 2.* Plaintiffs received additional Notices on or about June 18, 2009, citing this same

5   information. *See Exhibit 3.* Unfortunately, for the Plaintiffs, the events giving rise to the instant

6   litigation did not even arise until <u>after</u> October 14, 2008, the last day to file an administrative claim

7   against the Receiver.

8       Regardless, the Court dismissed that case, citing lack of subject matter jurisdiction. [See

9   Document No. 40].

10      As such, those original Plaintiffs submitted the Proof of Claim information requested in the

11  Notice. However, each Plaintiff received a "Notice of Disallowance of Claim," from the FDIC. *See*

12  *Exhibit 4.* The FDIC disallowed the claims because the proper party to bring the claims against is

13  the <u>current</u> servicer of the loans, which is OneWest. Therefore, the Plaintiffs had no choice but to

14  maintain lawsuits rather than pursue the proposed administrative claims, which were denied.

15

16  **B.**    **FACTS AS THEY RELATE TO ONEWEST'S OWNERSHIP OF THE LOANS AND
            THE REQUIREMENT FOR ONEWEST TO PROVIDE LOAN MODIFICATIONS
17          UNDER HAMP.**

18      Here, OneWest is the successor in interest to hundreds of loans that are in violation of

19  unlawful lending practices and violate truth in lending disclosures. Therefore, a permanent

20  injunction is necessary to prevent OneWest from foreclosing or evicting any of the Plaintiffs or class

21  plaintiffs. Specifically, every Plaintiff that is named in the Complaint and the First Amended

22  Complaint has a loan that is currently serviced by OneWest. As the current servicer to these loans,

23  OneWest is under an obligation to work with the Plaintiffs (its customers) when the customers

24  request assistance based upon financial hardships.

25      Problems with the prior loans that OneWest is successor of can be remedied. Specifically, in

26  order for the loans to be made right, all that OneWest would need to do is provide loan

27  modifications.

28      Under the terms of the "Commitment to Purchase Financial Instrument and Servicer

ALLISTER + ASSOCIATES
823 Las Vegas Blvd, South
Fifth Floor
Las Vegas, NV 89101

1   Participation Agreement for the Home Affordable Modification Program under the Emergency
2   Economic Stabilization Act of 2008" (hereinafter "HAMP contract") (Exhibit 5), OneWest must
3   consider for loan modification all minimally eligible non-GSE loans it services that are either in
4   default or at risk of imminent default.

5         To be eligible for assessment under HAMP, a borrower need only meet the following
6   minimum eligibility criteria: (1) the borrower's mortgage is a first lien originated before January 1,
7   2009; (2) the mortgage has not been previously modified under HAMP; (3) the borrower has
8   defaulted (i.e. is 60 days or more delinquent) or default is reasonably foreseeable; (4) the mortgage is
9   secured by a one- to four unit property; (5) the borrower's monthly payment towards principal,
10  interest, taxes, insurance, and association fees where applicable ("PITIA") exceed 31% of his or her
11  gross monthly income; (6) the borrower has experienced financial hardship; (7) the borrower lacks
12  the liquid assets to meet his or her monthly mortgage payments; and (8) the unpaid principal balance
13  on the mortgage is less than or equal to $729,750 for one unit.

14        Once OneWest has determined that a borrower meets these basic eligibility criteria, OneWest
15  is required under the HAMP Contract to conduct a "net present value" ("NPV") test.  The NPV test
16  compares the net present value of cash flow from the borrower's loan if modified under HAMP to
17  the net present value of cash flow without a modification.  This is done by applying a Standard
18  Modification Waterfall calculation to establish the cash flow that would result from modification.
19  The goal of the Standard Modification Waterfall is to reduce to the mortgage to 31% borrower's
20  monthly gross income.

21        If this test is positive, OneWest must offer the borrower a modification under HAMP.  If the
22  NPV test is negative, OneWest is still required under the HAMP Contract to consider the borrower
23  for other foreclosure prevention measures, including other mortgage modification programs , such as
24  Hope for Homeowners, or other loss mitigation programs.

25        If eligible for a loan modification, OneWest is required to offer a 90-day trial modification
26  period; if an eligible borrower successfully competes the trial period by making the required
27  payments, the modification becomes permanent.

28        In the present case, an injunction has already been granted. Further, an injunction is and was

1    necessary  because the HAMP contract prohibits foreclosure sales during the HAMP process:

2

3    (a)    The HAMP contract requires that "[f]oreclosure actions ..., including initiation of new

4            foreclosure actions, must be postponed for all borrowers that meet the minimum

5            HAMP eligibility criteria." (Frequently Asked Questions, at 2 (August 19, 2009).)

6            Further, OneWest "must not conduct foreclosure sales on loans previously referred to

7            foreclosure or refer new loans to foreclosure during the 30-day period that the

8            borrower has to submit documents evidencing an intent to accept the Trial Period

9            Plan offer. (Supp.Direct. 09-01, at 14 (available at

10           https://www.hmpadmin.com/portal/docs/hamp_servicer/sd0901.pdf).)

11   (b)    The HAMP contract also prohibits foreclosure sales during the three-month trial

12           period proceeding any permanent loan modification.

13   (c)    Even if a borrower defaults after receiving a permanent HAMP modification, the

14           HAMP Contract states that OneWest "must work with the borrower to cure the

15           modified loan, or if that is not feasible, evaluate the borrower for any other available

16           loss mitigation alternatives prior to commencing foreclosure proceedings. " *id. at 19.*

17   (d)    Moreover, because an eligible borrower who is not offered a HAMP modification

18           must be considered for "other foreclosure prevention alternatives, including

19           alternative modification programs, deed-in-lieu and short sale programs," the HAMP

20           Contract requires that "[a]ny foreclosure action will be temporarily suspended ...

21           while borrowers are considered for alternative foreclosure prevention options."

22           (Guidelines at 3,6 (available at

23           http://www/treas.gov/press/releases/reports/modification_program_guidelines.pdf).)

24           Many of the Plaintiffs and proposed Plaintiffs are borrowers who meet the minimum criteria

25   to be considered for the Home Affordable Modification Program ("HAMP"): (a) they defaulted on

26   their mortgage due to financial hardship; (b) the mortgaged property is their primary residence; (c)

27   their mortgage originated before January 2009; (d) the balance owed on the mortgage does not

28   exceed the limits set forth by HAMP; and (e) the monthly payments on the mortgage for principal,

1  interest, property taxes, and insurance exceed 31% of their gross monthly income.

2      The Plaintiffs have on their own, through loan modification assistance companies, and

3  through counsel with Callister + Associates, LLC, made numerous phone calls to OneWest and

4  counsel in an attempt to obtain loan modifications.

5      Therefore, as the current servicer of the Plaintiffs' loans, OneWest has a current obligation to

6  each and everyone of the Plaintiffs. OneWest cannot skirt its duties and obligations by arguing that

7  Plaintiffs should submit administrative claims to its predecessor.

8

9  ## III.

10  ## PROCEDURAL HISTORY

11      Procedurally, OneWest's assertion for summary judgment against all of the causes of action,

12  with respect to Para, Covelli, Escobar, Garcia, and Forousmand are not even ripe, for the following

13  procedural reasons:

14      First, Parra filed for bankruptcy protection on January 22, 2010, and as such, the automatic

15  stay associated therewith prevents adjudication of this Motion as to her claims. On January 26,

16  2010, Plaintiffs filed a Notice [Suggestion] of Filing Bankruptcy. [See Document No. 59].

17      Second, Plaintiffs' counsel has been unable to contact Covelli for a substantial period of

18  time, and as such, no representation can me made as to Covelli's claims. Moreover, Plaintiffs'

19  Counsel filed a Motion to Withdraw. [See Document Nos. 60 & 61].

20      Third, Escobar was granted a loan modification by OneWest on Wednesday, January 20,

21  2010. *See Exhibit 6.* Interestingly enough, however, the actual Making Home Affordable Approval

22  is dated November 9, 2009. *See Exhibit 7.* As such, by the time that counsel for OneWest turned

23  over the loan modification approval, all of the dates Escobar was required to respond by had long

24  since expired. Specifically, page 3 of the loan modification requested that Escobar respond to the

25  loan modification offer no later than November 23, 2009. Escobar recently submitted his executed

26  loan modification approval packet and updated financials to OneWest on January 29, 2010. *See*

27  *Exhibit 8.* However, because of the conflicting dates in the proposed loan modification approval and

28  statements from OneWest's counsel, Escobar wants to make sure that OneWest agrees to honor the

1    proposed loan modification and accepts his payment before dismissing his suit. If the loan
2    modification is accepted by OneWest, even though the packet was just recently turned in, OneWest
3    would be both complying with HAMP and satisfying Escobar's claims in this action.

4         Fourth, with regard to Garcia, OneWest failed to attend the State of Nevada required
5    Foreclosure Mediation. *See Exhibit 9.* Specifically, the mediation was held on December 14, 2009
6    before Michael C. Neu. *See Exhibit 9.* The mediator determined that service upon OneWest had
7    been effectuated and that OneWest willfully failed to attend. OneWest's failure to attend the
8    mediation should prevent a grant of the Defendant's Motion for Summary Judgment. Further the
9    failure of OneWest to attend the mediation should cause the Court to grant the relief requested in the
10   Counter-Motion for Judicial Review.

11        Regardless, because Garcia is so vested in obtaining a loan modification, she submitted a
12   loan modification application and financial packet to OneWest on December 15, 2009. *See Exhibit*
13   *10.* OneWest requested additional financials. As such, Garcia provided those to OneWest on
14   January 29, 2010. *See Exhibit 11.* Further, it should be noted that Garcia made a good faith
15   payment, to be held in the trust account for Callister + Associates, LLC, for the benefit of OneWest
16   on January 20, 2010, in the amount of five hundred dollars ($500.00.) *See Exhibit 12.*

17        Last, OneWest has argued that Forouzmand has refused a loan modification in the past.
18   However, although Forouzmand's counsel has requested that document on several occasions, it has
19   never been disclosed. *See Exhibit 13.* Therefore, whether or not the proposed loan modification was
20   adequate or even complied under HAMP is not known. Because these questions have not been
21   answered and the alleged loan modification approval was not provided, Forouzmand submitted
22   another loan modification application packet to OneWest on December 14, 2009. *See Exhibit 14.*
23   Further, on January 7, 2010, Forouzmand made a good faith payment, to be held in the trust account
24   for Callister + Associates, LLC, for the benefit of OneWest on January 7, 2010, in the amount of one
25   thousand one hundred dollars ($1,100.00.) *See Exhibit 15.*

26        Summary Judgment against the subject Plaintiffs, based upon the common facts of this case,
27   as well as the Plaintiff-specific facts for each individual addressed above, should be denied in its
28   entirety. Because Garcia dn Forouzmand appear to be the only Plaintiffs that this motion is directed

1  at, whom continue to seek relief, this Response solely responds to allegations directed against those

2  parties.

3

4  ### IV.

5  ### LEGAL ARGUMENTS IN SUPPORT OF
   ### RESPONSE TO MOTION FOR SUMMARY JUDGMENT

6

7  **A.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.**

8     Summary judgment is authorized when the record, considered in a light most favorable to the

9  nonmoving party, demonstrates no genuine issue of material fact, and it is determined that the

10  moving party is entitled to judgment as a matter of law.  <u>Caughlin Ranch Homeowners Ass'n v.</u>

11  <u>Caughlin Club</u>, 109 Nev. 264, 265, 849 P.2d 310, 311 (1993).

12     FRCP Rule 56(a) provides in relevant part as follows:

13        A party seeking recovery upon a claim . . . may, at any time after the
          expiration of 20 days from the commencement of the action... move
14        with or without supporting affidavits for a summary judgment in his
          favor upon all or any part thereof.
15
     FRCP Rule 56(c) further provides, in relevant part, that:
16
        The judgment sought shall be rendered forthwith if the pleadings,
17        depositions . . . together with affidavits, if any, show that there is no
          genuine issue as to any material fact and that the moving party is
18        entitled to a judgment as a matter of law.

19     The duty of the court in a summary judgment is to pierce the pleadings, <u>Dredge Corp. v.</u>

20  <u>Husite Co.</u>, 78 Nev. 69, 369 P.2d 676, (1962), and to test whether, under the unconverted facts, one

21  party is entitled to judgment as a matter of law.  <u>Force v. Peccole</u>, 74 Nev.64, 322 P.2d 307 (1958).

22  The U.S. Supreme Court has opined that:

23        Summary judgment procedure is properly regarded not as a disfavored
          procedural shortcut, but rather as an integral part of the federal rules as
24        a whole, which are designed to secure the just, speedy and inexpensive
          determination of their reaction.
25
     <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 106 S.Ct. 2548 (1986).
26
     Most importantly, Nevada Courts have held:
27
        The opposing party is not entitled to have the motion for summary
28        judgment denied on the mere hope that at trial he will be able to

CALLISTER + ASSOCIATES
823 Las Vegas Blvd. South
Fifth Floor
Las Vegas, NV 89101

10

1  discredit movant's evidence; he must a the hearing be able to point out
   to the court something indicating the existence of a genuine issue for
2  trial.

3  Hickman v. Meadow Wood Reno, 96 Nev. 782, 617 P.2d 871 (Nev. 1980).

4  Lest there is some argument as to whether it is proper to decide the issue of contract validity

5  without taking it to the trier of fact, the Nevada Supreme Court has held that:

6     **Issues of contractual construction**, in the absence of ambiguity or
      other factual complexities, **present questions of law** for the courts
7     **and are suitable for determination by summary judgment**.

8  Ellison v. California State Automobile Association, 106 Nev. 601, 797 P.2d 975 (1990)
   (emphasis added).

9
   In the instant action, questions of fact predominate OneWest's requested relief.  Therefore,
10
   OneWest's Motion for Summary Judgment must be denied.
11

12 **B.**   **ONEWEST IS NOT ENTITLED TO SUMMARY JUDGMENT ON CLAIMS**
          **ARISING FROM THE ACTS OF INDYMAC BANK, FSB.**
13
          **1.**   **The Provisions of NRS §598d Specifically Shift Indymac's Liability to Onewest**
14               **in this Action, Rendering Plaintiffs' Claims Viable Against Onewest.**

15 NRS 598D.120 reads:

16    **NRS 598D.120  Repurchase of home loan by lender who sold home**
      **loan.**
17
      1. If an action has been filed in a court of competent jurisdiction
18    claiming an unfair lending practice in connection with a home loan,
      **the lender who holds the home loan may sell the home loan and**
19    **recover damages and costs as provided in this section if the lender**
      **did not:**
20
      (a) **Originate the home loan**; and
21
      (b) Willfully engage in any unfair lending practice described in this
22    chapter in connection with the home loan.

23    2. The lender described in subsection 1 may require the person from
      whom the lender purchased the home loan described in subsection 1
24    to:

25    (a) Repurchase the home loan for the amount the lender paid for the
      home loan; and
26
      (b) Pay to the lender all damages and reasonable costs incurred by the
27    lender that are related to:

28    (1) The purchase of the home loan by the lender from the person;

(2) Any damages awarded in the action described in subsection 1;

(3) Any costs related to the action described in subsection 1;

(4) The repurchase of the home loan by the lender if the lender was required to repurchase the home loan from another lender pursuant to this section; and

(5) The repurchase of the home loan from the lender by the person pursuant to this section.

3. The person described in subsection 2:

(a) Shall repurchase the home loan and pay the damages and costs as described in subsection 2; and

(b) After repurchasing the home loan, may sell the home loan and recover damages and costs as provided in this section if he is a lender described in subsection 1.

*See*, NRS 598D.120 (Emphasis Added).

NRS 598D.050 defines a Lender, as follows:

> **NRS 598D.050 "Lender" defined.** "Lender" means a mortgagee, beneficiary of a deed of trust or other creditor who holds a mortgage, deed of trust or other instrument that encumbers home property as security for the repayment of a home loan.

*See*, NRS 598D.050.

The key fact in this case is that OneWest is currently the holder of the Plaintiffs' mortgage notes. As such, and contrary to the assertion of the Defendants, NRS 598D does not prevent the Plaintiffs from bringing suit against OneWest, based upon the fact that OneWest did not originate the loan, did not exist at the time the loan was made or that OneWest is (allegedly) not the legal successor to IndyMac Bank. Quite the contrary. NRS 598D.120 specifically permits the Plaintiffs in this action to bring suit against OneWest as the holder of the mortgage loans at issue in this action. This fact is further demonstrated, based upon the fact that NRS 598D.120(2) expressly provides a remedy for OneWest to recover damages against the lender who committed the Unfair Lending Practices, as pled in Plaintiffs' Complaint. Plaintiffs posit that said recovery may be had by OneWest against the FDIC and IndyMac Bank.

Moreover, Defendants' assertion that OneWest somehow does not, "hold," the loans at issue in this action is preposterous. OneWest currently has the ability to collect all sums due on said loans,

as well as to enforce legal rights under said loans, likely in the form of foreclosure actions.  Is it really the position of OneWest that they are able to foreclose on mortgage notes but that they, simultaneously, are not the true holder of said notes?  If so, who holds the notes?  Plaintiffs hope that for Defendants' sake, this is not the case.  Either OneWest is the holder of the note, who consequently possesses foreclosure rights, or they are not.  OneWest cannot have it both ways.

Even further, the Defendants seem to forget the fact that, based upon their position as loan servicing agent, OneWest is required, under the provisions of HAMP, to negotiate possible loan modifications in good faith with defaulting borrowers, prior to foreclosing on the loans.  This is the entire crux of this lawsuit.  The injunction in place in this action specifically prohibits OneWest from foreclosing on Plaintiffs' loans, prior to complying with HAMP.

In sum, NRS 598D provides a specific statutory mechanism for the Plaintiffs (borrowers) in this case to pursue their claims against OneWest, as successor to IndyMac Bank, including Plaintiffs' claims for: Declaratory Judgment, Breach of Contract, and Unfair Lending Practices, predicated upon NRS 598D and Deceptive Trade Practices.

Additionally, all arguments presented by OneWest in support of its Motion for Summary Judgment that: (1) OneWest that it did not originate the loans at issue in this case; (2) OneWest did not exist at the time the loans were originated; and (3) that OneWest is not the legal successor to IndyMac, simply do not provide factual, statutory or legal support for the instant Motion.  Therefore, the instant Motion for Summary Judgment should be denied, as to all Plaintiffs, at this time.

## 2.    Because Onewest's Agreement with the FDIC Contradicts Nevada Law, the Contract Is Void.

Drexler v. Tyrrell, in which the Nevada Supreme Court plainly stated:

> Courts will not lend their aid to enforce illegal contracts or actions grounded upon immoral or illegal acts. **Every act is unlawful which the law forbids to be done, and every contract is void which contravenes the law.** Agreements contravening the ends and objects of the enactments of the Legislature, or as it is most commonly expressed, the policy of those enactments, **are void**.

Drexler v. Tyrrell, 15 Nev. 114 (Nev. 1880).

The Drexler holding has been consistently upheld by Nevada Courts.  The Court in Alter v.

1  Clark,193 F. 153 (D.C.Nev. 1911) noted, "if a contract sought to be enforced **is expressly or**
2  **impliedly forbidden by statute** or by common law, **no court will lend its assistance to give it**
3  **effect**." *See*, Id at 158 (emphasis added).  In the case of Martinez v. Johnson, 61 Nev. 125, 119 P.2d
4  880 (Nev. 1941), the Court held that, "Generally, an act done or contract made in disobedience of
5  law **creates no right of action which a court will enforce**."  Id. (emphasis added); *citing*: Drexler
6  v. Tyrell, 15 Nev. 114 (Nev. 1880).

7       In this case, there can be no question that the contract entered into between the OneWest and
8  the FDIC is void, as a matter of law.  Under the holding of Drexler and its case progeny, cited above,
9  Nevada Courts have been exceedingly clear that contracts that are created in violation of statute
10 cannot be enforced.  As discussed previously in this Motion, there is no question that the agreement
11 between the OneWest and the FDIC clearly violates the statutory provisions of NRS 598D.120.  As
12 such, the agreement between OneWest and the FDIC, which eliminates any and all liabilities that are
13 the subject of this litigation is void, as a matter of law.

14      Moreover, under the holdings of Alter and Martinez, cited above, Nevada Courts are
15 exceedingly clear that illegal contracts cannot be enforced.

16      **3.**     **Plaintiffs' Claims Are Not Subject to FDIC's Administrative Claim Process.**

17      As discussed more fully above, Plaintiffs claims are not subject to the FDIC's administrative
18 process for several reasons.  First, Plaintiffs claims have already been denied by that process.  *See*
19 *Exhibit 4.*  Further, the causes of action brought against OneWest relate to their current and recent
20 activity since taking over the loans from Indymac Bank FSB.  After OneWest took over and began
21 servicing Plaintiffs' loans, OneWest began breaching contracts with the Plaintiffs by failing to
22 provide loan modifications to them when requested.  Further, OneWest breached its duty of good
23 faith and fair dealing in relation to the loans, requests for loan modifications, and approving the loan
24 modifications.

25      The Eighth Cause of Action, violation of NRS 598D, is the only cause of action that relates
26 to activities and allegations of unfair lending practices which occurred *before* OneWest took over the
27 Plaintiffs loans.  However, as discussed in sections IV-B- 1&2 above, OneWest is still liable for the
28 unlawful lending practices, because NRS 598D.120 mandates the same.

1    Therefore, Plaintiffs' claims are not subject to the FDIC's administrative claim process.

2

3    **D.    ONEWEST IS NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR SELF**
4    **DESCRIBED 'ORIGINATION-BASED' CLAIMS (FIRST, THIRD AND EIGHTH**
     **CAUSES OF ACTION.**
5
6        OneWest argues that because it did not originate Plaintiffs' loans, that OneWest cannot be

7    liable for those loans. To the contrary. Further, OneWest's heavy reliance upon <u>Velasquez v. HSBC</u>

8    <u>Mortgage Servs.</u>, No. 2:09-cv-00784, 2009 WL 2338852 (D.Nev. July 24, 2009) is misplaced. In

9    that unpublished case, the court dismissed the entire lawsuit after the defendant lenders filed a

10   motion to dismiss, which the plaintiff failed to file any response in opposition to. *See Exhibit 16.*

11   Therefore, there is no question that the court dismissed claims brought under NRS 598D where the

12   named defendants had not originated the loan. There is no question that the court also dismissed

13   claims for suitability, negligence, negligence per se, truth in lending violations, real estate settlement

14   procedures act, breach of fiduciary duty, negligent misrepresentation, and breach of covenant of good

15   faith and fair dealing. However, the ruling occurred because the Plaintiffs failed to defend or

     otherwise respond to the motion. *See Exhibit 16.*
16
17       As discussed more fully below, the Court should not dismiss Plaintiffs' claims for declaratory

18   relief, breach of contract, and unfair lending practices - NRS 598D. However, Plaintiffs agree that

19   the ninth cause of action for deceptive trade practices may be dismissed because it is grounded in

20   deceptive practices and acts that OneWest has not engaged in.

21

22       **1.    OneWest is Not Entitled To Summary Judgment On Plaintiffs' First Cause of**
             **Action for Declaratory Injunction.[3]**

23       The requisite precedent facts or conditions which the courts generally must find exist in order

24   that declaratory relief may be obtained is: (1) there must be a justiciable controversy; (2) the

25   controversy must be between persons whose interests are adverse; (3) that the party seeking

26   declaratory relief must have a legal interest in the controversy, and (4) the issue involved in the

27

28   _____

     [3] This cause of action was mis-named. It should have been titled Declaratory Relief.

ALLISTER + ASSOCIATES
123 Las Vegas Blvd, South
Fifth Floor
Las Vegas, NV 89101

controversy must be ripe for judicial determination. NRS 30.040; <u>Kress v. Corey</u>, 65 Nev. 1, 189 P.2d 352 (1948).

NRS 30.040 provides in pertinent part:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status or other legal relations thereunder.

See, NRS 30.040.

Actions for declaratory relief are governed by the same liberal pleading standards that are applied in other civil actions. <u>Breliant v. Prefferred Equities Corporation</u>, 109 Nev. 842, 858 P.2d 1258 (1993). However, individuals must first have standing as interested persons to challenge an agreement or contract in a declaratory judgment action. <u>Wells v. Bank of Nevada</u>, 90 Nev. 192, 197, 522 P.2d 1014, 1017 (1974). Disputes that arise under an agreement or contract are to be determined only by, "those who have legal rights or duties thereunder." <u>Id.</u> The mere fact that a third party might be, "affected," by the enforcement of a contract or agreement does not give that third party, when it is not a party to said contract or agreement, standing to seek declaratory relief under NRS 30.040. <u>Id.</u> Furthermore, NRS 30.040, "is directed only to those who enjoy a legal interest in the agreement under scrutiny." <u>Id.</u> at 197-8.

In the present case, a justiciable controversy exists between Plaintiffs and Defendant as to the loans provided to Plaintiffs by Indymac Bank FSB and are now being serviced by OneWest.  The specific controversy involves whether OneWest is liable for unfair lending practices in violation of NRS 598D.

As this case has evolved, a justiciable controversy also exists regarding OneWest's duties and obligations to Plaintiffs under the HAMP contract. *See Exhibit 5.* Pursuant to that contract, OneWest is required to approve loan modifications to its borrowers, which include, but is not limited to the Plaintiffs. However, to date OneWest has not provided any of the Plaintiffs listed in this Motion for Summary Judgment a loan modification under HAMP, except for Perry Escobar.

Plaintiffs have a legally protectable interest in the controversy because they have an interest

1   in keeping and maintaining the status quo of their properties.

2   　　The issue will be ripe for judicial determination because, inter alia, it presents an existing

3   controversy as to the Parties' rights and obligations under NRS 598D, the loan agreements/contracts,

4   and the HAMP contract, at issue herein. However, at this juncture, questions of fact, such as

5   whether or not OneWest has decided whether it will award the Plaintiffs' loan modification under

6   HAMP predominate. At this time, the only Plaintiff listed in this Motion which has been rejected or

7   approved for a loan modification is Perry Escobar. Therefore, until the remaining Plaintiffs are told

8   whether they are rejected or approved for a loan modification, the request to dismiss this cause of

9   action is premature.

10  　　Therefore, OneWest's Motion for Summary Judgment, seeking to have the declaratory relief

11  cause of action dismissed should be denied.

12  **2.　OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Third Cause of Action for Breach of Contract.**

13

14  　　Plaintiffs all have home loans and mortgages that are secured by real property (their homes).

Plaintiffs entered into contracts for the mortgages. OneWest has been assigned all right, title, and

15  interest to those loans. *See Exhibit 1.* Therefore, if OneWest breaches the terms of the contracts

16  which it has been assigned all right, title, and interest in, OneWest will be liable for breaching its

17  contracts.

18  　　Plaintiffs have alleged that OneWest has breached the loan agreements/contracts by failing to

19  provide some and/or any response to Plaintiffs' request for "Mortgage Payment Assistance" within

20  the 30 days, as required in the loan agreements/contracts.

21  　　In fact, OneWest failed to attend its State of Nevada Mediation with Garcia on December 14,

22  2009. With respect to Forouzmand, the mediator sua sponte cancelled her State of Nevada

23  Mediation which was scheduled to go forward on October 13, 2009 because the "Lender

24  subsequently rescinded the Notice of Default" after receiving notice of the preliminary injunction in

25  this case.[4] *See Exhibit 17.*

26

27  　[4] Garcia and Forouzmand are the only two discussed in this section because the claims are moot with respect to Parra (whose case is stayed by her bankruptcy) and Escobar (who was already awarded a loan modification).

28

1   It was not until recently that OneWest would even discuss loan modification options with the

2   Plaintiffs.        As such, Garcia submitted her loan modification application to OneWest on

3   December 15, 2009 and Forouzmand submitted her loan modification application to OneWest on

4   December 14, 2009. *See Exhibits 10 & 14.* Both are awaiting responses from OneWest. *See Exhibit*

5   *18- Affidavit of Forouzmand.*

6   As such, the request for summary judgment on the third cause of action, for breach of

7   contract is premature because the recent activity of OneWest (in late November/December 2009

8   whereby they agreed to review loan modification applications and may provide mortgage assistance)

9   may moot this cause of action. It should be noted that the complaint alleging this cause of action

10   was filed on June 5, 2009.

11   At this juncture, there are still questions of fact regarding whether or not Garcia and

12   Forouzmand qualify for a HAMP modification and there are also questions of fact regarding whether

13   or not OneWest intends to award these Plaintiffs a loan modification, if they do qualify. Therefore,

14   summary judgment is not appropriate at this point of litigation.

15

16   **3.   OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Eighth Cause of Action for Unfair Lending Practices.**

17

18   Similar to the arguments already made in sections IV-B, 1-3, of this brief, OneWest is not

    entitled to summary judgment on Plaintiffs' Eighth Cause of Action for Unfair Lending Practices.

19   NRS 598D.120 allows the current lender to seek damages from the party that it purchased the loan

20   from. NRS 598D.120 reads:

21

22   **NRS 598D.120  Repurchase of home loan by lender who sold home loan.**

23
     1. If an action has been filed in a court of competent jurisdiction
24   claiming an unfair lending practice in connection with a home loan,
     **the lender who holds the home loan may sell the home loan and**
25   **recover damages and costs as provided in this section if the lender did not:**

26   (a) **Originate the home loan**; and

27
     (b) Willfully engage in any unfair lending practice described in this
28   chapter in connection with the home loan.

ALLISTER + ASSOCIATES
823 Las Vegas Blvd, South
Fifth Floor
Las Vegas, NV 89101

18

1
2

    2. **The lender described in subsection 1 may require the person from whom the lender purchased the home loan described in subsection 1 to:**

3
4

    **(a) Repurchase the home loan for the amount the lender paid for the home loan; and**

5

    **(b) Pay to the lender all damages and reasonable costs incurred by the lender that are related to:**

6

    (1) The purchase of the home loan by the lender from the person;

7

    (2) Any damages awarded in the action described in subsection 1;

8

    (3) Any costs related to the action described in subsection 1;

9
10

    (4) The repurchase of the home loan by the lender if the lender was required to repurchase the home loan from another lender pursuant to this section; and

11
12

    (5) The repurchase of the home loan from the lender by the person pursuant to this section.

13

    3. The person described in subsection 2:

14

    (a) Shall repurchase the home loan and pay the damages and costs as described in subsection 2; and

15
16

    (b) After repurchasing the home loan, may sell the home loan and recover damages and costs as provided in this section if he is a lender described in subsection 1.

17

*See*, NRS 598D.120 (Emphasis Added).

18

NRS 598D.050 defines a Lender, as follows:

19
20
21

    **NRS 598D.050  "Lender" defined.**  "Lender" means a mortgagee, beneficiary of a deed of trust or other creditor who holds a mortgage, deed of trust or other instrument that encumbers home property as security for the repayment of a home loan.

22

*See*, NRS 598D.050.

23

24

The key fact in this case is that OneWest is currently the holder of the Plaintiffs' mortgage

25

notes. As such, and contrary to the assertion of the Defendants, NRS 598D does not <u>prevent</u> the

26

Plaintiffs from bringing suit against OneWest, based upon the fact that OneWest did not originate

27

the loan, did not exist at the time the loan was made or that OneWest is (allegedly) not the legal

28

successor to IndyMac Bank.  Quite the contrary.  NRS 598D.120 specifically <u>permits</u> the Plaintiffs in

1   this action to bring suit against OneWest as the holder of the mortgage loans at issue in this action.
2   This fact is further demonstrated, based upon the fact that NRS 598D.120(2) expressly provides a
3   remedy for OneWest to recover damages against the lender who committed the Unfair Lending
4   Practices, as pled in Plaintiffs' Complaint. Plaintiffs posit that said recovery may be had by
5   OneWest against the FDIC and IndyMac bank.

6       Moreover, Defendants' assertion that OneWest somehow does not, "hold," the loans at issue
7   in this action is preposterous. OneWest currently has the ability to collect all sums due on said loans,
8   as well as to enforce legal rights under said loans, likely in the form of foreclosure actions. Is it
9   really the position of OneWest that they are able to foreclose on mortgage notes but that they,
10  simultaneously, are not the true holder of said notes? If so, who holds the notes? Plaintiffs hope that
11  for Defendants' sake, this is not the case. Either OneWest is the holder of the note, who
12  consequently possesses foreclosure rights, or they are not. OneWest cannot have it both ways.

13      Even further, the Defendants seem to forget the fact that, based upon their position as loan
14  servicing agent, OneWest is required, under the provisions of HAMP, to negotiate possible loan
15  modifications in good faith with defaulting borrowers, prior to foreclosing on the loans. This is the
16  entire crux of this lawsuit. The injunction in place in this action specifically prohibits OneWest from
17  foreclosing on Plaintiffs' loans, prior to complying with HAMP.

18      In sum, NRS 598D provides a specific statutory mechanism for the Plaintiffs (borrowers) in
19  this case to pursue their claims against OneWest, as successor to IndyMac Bank, including Plaintiffs'
20  claims for: Declaratory Judgment, Breach of Contract, and Unfair Lending Practices, predicated
21  upon NRS 598D and Deceptive Trade Practices.

22      Additionally, all arguments presented by OneWest in support of its Motion for Summary
23  Judgment that: (1) OneWest that it did not originate the loans at issue in this case; (2) OneWest did
24  not exist at the time the loans were originated; and (3) that OneWest is not the legal successor to
25  IndyMac, simply do not provide factual, statutory or legal support for the instant Motion. Therefore,
26  the instant Motion for Summary Judgment should be denied, as to all Plaintiffs, at this time.

27      **4.      Plaintiffs Stipulate to Dismiss the Ninth Cause of Action for Deceptive Trade
                Practices.**

28

1   Discovery has shown that OneWest was not the lender that committed deceptive trade

2   practices upon the Plaintiffs. Therefore, Plaintiffs stipulate to dismiss this cause of action.

3

4   **D.   ONEWEST IS NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR SELF DESCRIBED 'SERVICING CLAIMS' (SECOND, THIRD, FOURTH, AND SIXTH**

5   **CAUSES OF ACTION).**

6   OneWest argues that Plaintiffs are not entitled to any relief under Plaintiffs' second, third,

7   fourth, and sixth causes of action because OneWest did not have any duty to offer Plaintiffs' loan

8   modifications. To the contrary. OneWest has a duty under its HAMP contract to offer each of the

9   Plaintiffs, whom qualify, a loan modification. *See Exhibit 5.* Further, while OneWest is reviewing

10  the Plaintiffs' loan modifications and while the Plaintiffs are under a Trial Plan, OneWest is

11  preventing from foreclosing upon them. *See Exhibit 5.* At this juncture, there are still questions of

12  fact regarding whether or not Garcia and Forouzmand qualify for a HAMP modification and there

13  are also questions of fact regarding whether or not OneWest intends to award these Plaintiffs a loan

14  modification, if they do qualify. Therefore, Plaintiffs' second, third, fourth and sixth causes of

15  action should not be dismissed.

16

17  **1.   OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Second Cause of Action for Injunctive Relief.**

18

19  In the present case, Tony Ebers, the Executive Vice President & Chief Operating Officer

    signed the HAMP contract, on behalf of OneWest, on August 18, 2009. *See Exhibit 5.* Under the

20  terms of its HAMP contract, OneWest must consider for loan modification all minimally eligible

21  non-GSE loans it services that are either in default or at risk of imminent default. Plaintiffs outlined

22  those terms above in section II-B and therefore will not rehash upon the criteria.

23  In the present case, an injunction has already been granted. Further, an injunction is and was

24  necessary because the HAMP contract prohibits foreclosure sales during the HAMP process:

25

26

27  (a)   The HAMP contract requires that "[f]oreclosure actions ..., including initiation of new

    foreclosure actions, must be postponed for all borrowers that meet the minimum

28

1    HAMP eligibility criteria."  (Frequently Asked Questions, at 2 (August 19, 2009).)

2    Further, OneWest "must not conduct foreclosure sales on loans previously referred to

3    foreclosure or refer new loans to foreclosure during the 30-day period that the

4    borrower has to submit documents evidencing an intent to accept the Trial Period

5    Plan offer.  (Supp.Direct. 09-01, at 14 (available at

6    https://www.hmpadmin.com/portal/docs/hamp_servicer/sd0901.pdf).)

7    (b)    The HAMP contract also prohibits foreclosure sales during the three-month trial

8           period proceeding any permanent loan modification.

9    (c)    Even if a borrower defaults after receiving a permanent HAMP modification, the

10          HAMP Contract states that OneWest "must work with the borrower to cure the

11          modified loan, or if that is not feasible, evaluate the borrower for any other available

12          loss mitigation alternatives prior to commencing foreclosure proceedings. " *id. at 19.*

13   (d)    Moreover, because an eligible borrower who is not offered a HAMP modification

14          must be considered for "other foreclosure prevention alternatives, including

15          alternative modification programs, deed-in-lieu and short sale programs," the HAMP

16          Contract requires that "[a]ny foreclosure action will be temporarily suspended ...

17          while borrowers are considered for alternative foreclosure prevention options."

18          (Guidelines at 3,6 (available at

19          http://www/treas.gov/press/releases/reports/modification_program_guidelines.pdf).)

20   Upon information and belief, Garcia and Forouzmand are borrowers who meet the minimum

21   criteria to be considered for the Home Affordable Modification Program ("HAMP"): (a) they

22   defaulted on their mortgage due to financial hardship; (b) the mortgaged property is their primary

23   residence; (c) their mortgage originated before January 2009; (d) the balance owed on the mortgage

24   does not exceed the limits set forth by HAMP; and (e) the monthly payments on the mortgage for

25   principal, interest, property taxes, and insurance exceed 31% of their gross monthly income.

26   OneWest is currently reviewing their loan modification applications, which were sent in on

27   December 14, 2009 and December 15, 2009. *See Exhibits 11 & 14.*  At this juncture, there are still

28   questions of fact regarding whether or not Garcia and Forouzmand qualify for a HAMP modification

1  and there are also questions of fact regarding whether or not OneWest intends to award these

2  Plaintiffs a loan modification, if they do qualify.

3      What is not in question, is the fact that both Garcia and Forouzmand have submitted loan

4  modification applications to OneWest, which are currently being reviewed.  Additionally, what is not

5  in question, is the fact that while OneWest is reviewing Plaintiffs' loan modification applications,

6  that OneWest is prevented from foreclosing on their properties.  Further, what is not in question, is

7  that since OneWest failed to attend Garcia's State of Nevada Mediation, that OneWest cannot

8  receive a certificate of foreclosure.

9      Therefore, summary judgment and dismissal of Plaintiffs' claim for injunctive relief is not

10  appropriate.

11  **2.      OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Third Cause of Action for Breach of Contract.**

12  Plaintiffs have already responded to the reasons why summary judgment on their claims for

13  breach of contract is not appropriate in section IV-D-2.  Therefore, Plaintiffs refer the Court back to

14  that section.

15  **3.      OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Fourth Cause of Action for Breach of the Duty of Good Faith and Fair Dealing.**

16

17      Nevada courts recognize an implied covenant of good faith and fair dealing in every contract.

18  Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993).  Pursuant to the implied covenant,

19  each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the

20  benefits of the contract.  Id.  In other words, each party has the duty not to prevent or hinder

21  performance by the other party.  Hilton Hotels Corp. v. Butch Lewis Prod., Inc., 808 P.2d 919, 923

22  (Nev. 1991).  When one party performs a contract in a manner that is unfaithful to the purpose of the

23  contract, and the justified expectations of the other party are thus denied, damages may be awarded

24  against the party who does not act in good faith.  Id.  Here, Plaintiffs can demonstrate questions of

25  fact regarding OneWest's breach of the implied covenant of good faith and fair dealing.

26      OneWest argues that it does not have a duty of good faith and fair dealing to agree to a loan

27  modification.  To the contrary.  OneWest's reliance upon Ponder v. Chase Home Finance, LLC, ___

28

1    F.Supp. 2d ___, 2009 WL 3447756 at *1,3-4 (D.D.C. Oct 28, 2009) is once again misplaced. In

2    Ponder, the court dismissed a case that was brought in proper person and solely alleged causes of

3    action for breach of contract, misrepresentation, and negligence. *See Exhibit 19.* That lawsuit did

4    not even allege a breach of a duty of good faith and fair dealing.

5         In this case, the Plaintiffs have produced evidence as to each of these elements, and thus,

6    OneWest's Motion for Summary Judgment on the same must be denied. It is clear that, on its face,

7    there appears to be a valid contract between the parties. OneWest services Plaintiffs' loans at issue.

8    Further, OneWest entered into the HAMP contract thereby agreeing to grant loan modifications to

9    those who qualify. Plaintiffs are third party beneficiaries of the HAMP contract.

10        To obtain status as a third party beneficiary in a written contract, there must clearly appear a

11   promissory intent to benefit the third party and ultimately it must be shown that the third party's

12   reliance was foreseeable. Lipshie v. Tracy Investment Co., 93 Nev. 370, 379, 566 P.2d 819, 824

13   (1997) *citing* Olson v. Iacometti, 91 Nev. 241, 533 P.2d 1360 (1975) and Lear v. Bishop, 86 Nev.

14   709, 476 P.2d 1970). In the present case, the Plaintiffs satisfy the third party beneficiary

15   requirements.

16        Before a third party may derive a benefit of a promise and is entitled to bring an action

17   thereon, there must be an intent clearly manifested by the promisor to secure the benefit claimed by

18   the third party. Lipshie, 93 Nev. at 380. In Lipshie, an action was brought by a payee to recover on a

19   promissory note against the maker's successor's assets. Specifically, Tracy (successor) and Wolf

20   (maker) entered into a contract that Tracy would take over an extraordinary loan from Wolf. In fact,

21   the contract even mentioned Lipshie (the payee) and that he would receive a benefit. However, there

22   was no promise, at least on the part of Tracy to Lipshie, wherein Tracy would satisfy Wolf's debt.

23   That agreement was solely between Tracy and Wolf; Lipshie was not a party to the agreement.

24   Tracy did not intend to benefit Lipshie; rather Tracy intended to benefit Wolf. Any benefit Lipshie

25   received was *incidental.* As such, the Court held that Lipshie was not a third party beneficiary whom

26   could enforce the contract against Tracy.

27        A parties' intent should be "gleaned from reading the contract as a whole in light of the

28   circumstances under which it was entered." Canfora v. Coast Hotels and Casinos, Inc.121 Nev. 771,

1 │ 121 P.3d 599 (2005) *citing* County of Clark v. Bonanza No. 1, 96 Nev. 643, 648-49, 615 P.2d 939,

2 │ 943 (1980). In Canfora, the Court addressed whether Chris Canfora was bound by the terms of her

3 │ husband's insurance plan. The Court held that Chris Canfora was bound because she was an

4 │ intended third party beneficiary. The Court came to this conclusion because in addition to being

5 │ listed as an intended beneficiary of the plan, all of her medical expenses arising from a 1999 accident

6 │ were covered by her husband's insurance. The Court determined that the fact that she did not sign

7 │ the contract was irrelevant because she was an intended beneficiary of the contract.

8 │    In the present case, the HAMP contract was intended to benefit Plaintiffs and thus, the

9 │ Plaintiffs may sue OneWest as a third party beneficiary to enforce its contractual terms and to

10 │ enforce OneWest into good faith and fair dealing.

11 │    Only recently, December 2009, did OneWest accept loan modification applications from

12 │ Plaintiffs. Those documents are currently under review with OneWest. However, the lawsuit was

13 │ originally filed in June 2009 because of OneWest's refusal to act in good faith. Since OneWest has

14 │ recently agreed to begin reviewing the Plaintiffs' loan modification applications, questions of fact

15 │ exist as to whether OneWest intends to act in good faith in reviewing the loan modification

16 │ agreements and whether they will continue to act in good faith.

17 │    Therefore, OneWest's motion must be denied at this time as it is premature.

18 │

19 │    **4.    OneWest Is Not Entitled to Summary Judgment On Plaintiffs' Sixth Cause of
       Action for Inspection and Accounting.**

20 │

21 │    Pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692g, a creditor

22 │ must supply a party a validation of a debt, if requested. Specifically, FDCPA 1692g states in

23 │ pertinent part:

24 │    (a) Notice of debt; contents Within five days after the initial communication with a consumer
       in connection with the collection of any debt, a debt collector shall, unless the following

25 │    information is contained in the initial communication or the consumer has paid the debt, send
       the consumer a written notice containing—

26 │       (1) the amount of the debt;

27 │       (2) the name of the creditor to whom the debt is owed;

28 │       (3) a statement that unless the consumer, within thirty days after receipt of the notice,
          disputes the validity of the debt, or any portion thereof, the debt will be assumed to be

valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) Notice provisions. The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

Plaintiffs all have home loans and mortgages that are secured by real property (their homes). Plaintiffs entered into contracts for the mortgages. OneWest has been assigned all right, title, and interest to those loans. *See Exhibit 1.* Therefore, if OneWest breaches the terms of the contracts which it has been assigned all right, title, and interest in, OneWest will be liable for breaching its contracts.

All that Plaintiffs are asking for in this cause of action is an up to date notice providing an accounting for Plaintiffs' payments and identifying the amount that Plaintiffs' owe on their homes. Pursuant to 15 U.S.C. 1692g, Plaintiffs are entitled to the same. Therefore, summary judgment is not appropriate.

E.   **GARCIA AND FOROUZMAND DO NOT HAVE ANY CLAIMS FOR WRONGFUL FORECLOSURE OR SLANDER OF TITLE.**

Garcia and Forouzmand agree that the causes of action for wrongful foreclosure and slander of title do not apply to them. These causes of action were not pled to apply to them. Therefore, Garcia and Forouzmand agree that if it appeared that these causes of action were ripe, with respect to them, that these causes of action may be dismissed.

**V.**

**LEGAL ARGUMENTS IN SUPPORT OF COUNTER-MOTION FOR JUDICIAL REVIEW**

A.   **IT IS APPROPRIATE FOR THIS HONORABLE COURT TO GRANT PLAINTIFF GARCIA'S PETITION FOR JUDICIAL REVIEW.**

NRS 107, as amended by AB 149, Section 1 (2009) establishes certain restrictions on the trustee's power of sale with respect to owner-occupied housing. This section allows the owner of the property to request a mediation, in order to seek a loan modification. Once mediation is requested, no further action may be taken, until completion of the mediation. Substantial compliance is required, pursuant to NRS 107.080(5)(a).

If any party fails to participate in the mediation in good faith, the mediator may recommend sanctions, which may include, but are not limited to, a judicial review of the loan at issue by the Court and modification thereof, in a manner deemed appropriate by the Court. Monetary sanctions, as well as an award of fees and/or costs, may be levied against the party who fails to participate in good faith in the mediation.

As pertains to Marlen Garcia, a mediation was scheduled to take place regarding his property, located at 137 Daisetta, Las Vegas, Nevada, APN # 140-31-717-001. *See Exhibit 9.* Specifically, the mediation was scheduled to take place on December 14, 2009. *See Exhibit 9.* However, no representative from OneWest attended. As such, OneWest is in violation of the above-cited provisions of NRS 107, for failing to attend the mediation and participate in good faith. Therefore, it is appropriate for this Honorable Court to entertain Ms. Garcia's Petition for Judicial Review, filed concurrently herewith. Plaintiff Garcia requests that the relief sought in her accompanying Petition

1  be granted in its entirety.  This request includes but is not limited to a loan modification as follows:

2  30 year fixed term at 2% for principal and interest upon the fair market value of the property.  The

3  fair market value is $120,000.00.  Therefore, the principal and interest payment shall be $443.54 per

4  month plus taxes and insurance in the amount of $174.60 per month, totaling a payment of $618.14.

5  Further, Ms. Garcia requests attorney fees and costs as sanctions.

6

7                                              **VI.**

8                                        **CONCLUSION**

9          Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant's

10  Motion for Summary Judgment, with the caveat that Plaintiffs stipulate and agree that the ninth

11  cause of action for deceptive trade practices may be dismissed.  Further, Plaintiffs' fifth and seventh

12  causes of action for wrongful foreclosure and slander of title do not relate to the Plaintiffs which this

13  motion is directed at.  Therefore, the fifth and seventh causes of action may be dismissed as to

14  Cesare Covelli Sr., Perry Escobar, Firouzeh Forouzmand, Marlen Garcia and Maria Parra, only.

15          Further, Plaintiffs request that this Court grant its Counter-Motion for Judicial Review

16  regarding Marlen Garcia and award her a loan modification upon the terms she has proposed.

17

18          Dated:  This  4th  day of February, 2010.

19                                              **CALLISTER + ASSOCIATES, LLC**

20

21                                              /s/ Brooke A. Bohlke, Esq.
                                                **MATTHEW Q. CALLISTER, ESQ.**
                                                Nevada Bar No. 001396
22                                              **BROOKE A. BOHLKE, ESQ.**
                                                Nevada Bar No. 009374
23                                              823 Las Vegas Boulevard So., Fifth Floor
                                                Las Vegas, Nevada 89101
24                                              *Attorneys for Plaintiffs*

25

26

27

28

1

2

## CERTIFICATE OF SERVICE

3     I hereby certify under penalty of perjury that on the 4th day of February, 2010, I served a true

4  and correct copy of the forgoing *Response to Motion for Summary Judgment as to Co-plaintiffs*

5  *Cesare Covelli Sr., Perry Escobar, Firouzeh Forouzmand, Marlen Garcia and Maria Parra and*

6  *Counter-motion for Summary Judgment and Request for Judicial Review as to Plaintiff Marlen*

7  *Garcia* via the following method:

8
       XX     By serving the following parties electronically through CM/ECF as set forth below;
9
       ☐      By facsimile transmission on that date.  The transmission was reported as complete and
10             without error;

11     ☐      By placing a true copy of the document listed above in the United States Mail, postage
              prepaid to those listed below:
12

13

14  DAVID A. CARROLL, ESQ.
    JONES VARGAS
15  Dcarroll@jonesvargas.com, gmccrea&jone@jonesvargas.com
    3773 Howard Hughes Pkwy, 3rd Floor
16  Las Vegas, Nevada 89169
    Facsimile No.: 702-737-7705
17
    JAMES GOLDEN, ESQ.
18  RENEE ZIPPRICH, ESQ.
    BRETT NATARELLI, ESQ.
19  DYKEMA
    10 South Wacker Drive, Suite 2300
20  Chicago, IL 60606
    Office: (312) 876-1700
21  Fax: (312) 627-2302
    bnatarelli@dykema.com
22  RZipprich@dykema.com
    jgolden@dykema.com
23
                                              /s/   Gina M. Rouw
24                                            An Employee of Callister + Associates, LLC

25

26

27

28