UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LUIS ARMANDO BENITO, RAYMOND BISSAILLON, BEOP CHUON, NORMAN TATE, CAROLS PADILLA VELASCO, ELENA WOODARD, STEVE AYRES, JAMES BAILEY, CESAR COVELLI SR., VALERIE DUNLAP, PERRY ESCOBAR, FIROUZEH FOROUZMAND, MARLEN GARCIA, ANTOINETTE GILL, ROBERT GRIEBEL, DORINE HORVATH, LUCH LOU, MATTHEW MOORE, MARIA PARRA, MARK SANDERS, ANTHONY SUGGS, AND MICHAEL ZANG.<br><br>Plaintiffs,<br><br>v.<br><br>INDYMAC MORTGAGE SERVICES, a Division of ONEWEST BANK, FSB,<br><br>Defendants. | 2:09-CV-001218-PMP-PAL<br><br>**ORDER** |

Before the Court for consideration is Defendant OneWest's fully briefed Motion for Summary Judgment (Doc. #53). On May 18, 2010, the Court conducted a hearing regarding Defendants' motion.

By this motion, OneWest seeks summary judgment against Co-Plaintiffs Cesar Covelli Sr., Perry Escobar, Firouzeh Forouzmand, Marlen Garcia, and Maria Parra on all claims in Plaintiffs' First Amended Complaint (Doc. #14) filed August 6, 2009. In their Complaint, Plaintiffs assert claims for declaratory relief under RESPA and TILA and unfair

lending practices under Nevada law (count one), injunctive relief (count two), breach of contract by failing to disclose critical information about the mortgages and/or by failing to respond to requests for mortgage payment assistance (count three), breach of the covenant of good faith and fair dealing by failing to respond to requests for mortgage assistance or for requests to provide information regarding the Deed (count four), wrongful foreclosure (count five), inspection and accounting (count six), slander of title (count seven), unfair lending practices by failing to use reasonably commercial means to determine a borrower's ability to repay (count eight), and deceptive trade practices (count nine).

OneWest argues that it did not originate any of the loans of these five Plaintiffs, but acquired the loans or the servicing rights on the loans from the FDIC.  OneWest further argues Plaintiffs had to adjudicate any liabilities pre-dating OneWest's acquisition of the loans through the FDIC's administrative process.  As to the loan servicing claims, OneWest argues that the claims refer to failure to negotiate loan modifications but all are based on facts that occurred before OneWest existed.  As to the wrongful foreclosure claims, OneWest argues it has not foreclosed on any of the properties and therefore is entitled to summary judgment.

OneWest entered into three agreements with FDIC/Indymac Federal: a Master Purchase Agreement, a Loan Sale Agreement, and a Servicing Business Asset Purchase Agreement.  (<u>See</u> Doc. #55, Ex. 1 at ¶ 3, Exs. 2, 3, 4.)  Pursuant to these agreements, OneWest purchased, among other loans, the loans of Forouzmand and Covelli, and acquired the servicing rights of, among other loans, the loans of Parra, Garcia, and Escobar.  (Doc. 55, Ex. 1 at ¶ 4.)  Pursuant to OneWest's agreements with FDIC, OneWest assumed no liabilities arising out of any dispute with Indymac or Indymac Federal.  For example, the Master Purchase Agreement states: "the Seller shall not assign and the Purchaser shall not assume any claims, debts, obligations or liabilities (whether known or unknown, contingent or unasserted, matured or unmatured), however they may be characterized, that the Failed

2

Thrift, IndyMac Federal or the Seller has or may have now or in the future . . . ."  (Doc. #55, Ex. 2 at 22.)  The Loan Sale Agreement provides that OneWest shall assume and agree to pay all obligations of IndyMac Federal with respect to certain lawsuits and claims listed in Schedule 2.01(c), and–

> any additional lawsuit, judgment, claim or demand involving foreclosures . . . with respect to any of the Assets, but only to the extent any such additional lawsuit, judgment, claim or demand is comparable in nature, scope and substance to those listed in Schedule 2.01(c), as determined by the Seller in its reasonable judgment (as evidenced by written notice thereof given to the Purchaser), if such determination is made (and such notice is provided) within sixty (60) days after the Closing Date, or by the mutual agreement of the Purchaser and the Seller, if such determination is after such sixty (60)-day period.

(Doc. #55, Ex. 3 at 12.)  The parties also agreed OneWest would not assume or be liable for any Excluded Liability, including "any liabilities or obligations of the Seller attributable to an act, omission or circumstances that occurred or existed prior to the Closing Date, other than the Assumed Liabilities."  (Id. at 12-13.)  This suit is not included in Schedule 2.01(c).  (Id. at Sched. 2.01(c).)  There is no evidence of any determination, either unilaterally by FDIC within 60 days or by mutual agreement after 60 days, that this lawsuit was included as a similar lawsuit for which OneWest assumed liability.

The Servicing Business Asset Purchase Agreement also provides that all liabilities that are not assumed are excluded.  (Doc. #55, Ex. 4 at 5, 14.)  This Agreement contains a similar statement that OneWest will assume the liabilities listed in the schedule, or any suit that is a similar lawsuit as determined by IndyMac Federal within 60 days, or by mutual agreement after 60 days.  (Id. at 14-15.)  Plaintiffs' lawsuit is not on the schedule and there is no evidence of any determination, either unilaterally by FDIC within 60 days or by mutual agreement after 60 days, that this lawsuit was included as a similar lawsuit for which OneWest assumed liability.

///

Just prior to OneWest's formation, Plaintiffs' counsel in this action filed a separte suit in State Court against Indymac alleging essentially the same claims as alleged in this case, and on behalf of some of the same named Plaintiffs in this case.  FDIC removed the action to this Court.  See Benito v. Indymac, 2:09-CV-00659-RLH-LRL.  The Court ultimately dismissed the case because none of the named plaintiffs had administratively exhausted their claims with the FDIC as required under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (Doc. #40 in 09-CV-659).

For the reasons set forth below, the Court finds that Defendants' Motion for Summary Judgment must be granted.

**A.  Count Nine**

Plaintiffs agree count nine, unfair trade practices, may be dismissed as to all Plaintiffs.  (Opp'n at 2 n.1.)

**B.  Covelli**

After OneWest filed this motion for summary judgment against Covelli, Plaintiffs' counsel moved to withdraw as Covelli's counsel.  (Doc. #60.)  The motion to withdraw was not ruled upon by the time Plaintiffs filed their response to the summary judgment motion.  (See Doc. #53 (response), Doc. #68 (granting second motion to withdraw).)  Although Plaintiffs' counsel still was counsel of record for Covelli, counsel did not argue Covelli's claims on the merits in the response.  Instead, counsel stated that they have been unable to contact Covelli for some time, and "as such, no representation can be made as to Covelli's claims." (Opp'n at 3.)  It appearing from the record that Plaintiff Covelli has stopped participating in this litigation and has failed to take action to Defendants' motion, the Court finds that Defendants' motion for summary judgment should be granted as to Plaintiff Covelli.

///

///

**C. Parra**

Parra has filed a notice of bankruptcy (Doc. #59). Plaintiffs argue the automatic stay therefore precludes any adjudication of her claims. OneWest responds that the automatic stay only bars adjudication of claims against the bankrupt, but does not bar resolving the bankrupt's claims against another party.

Title 11 U.S.C. § 362(a)(1) provides that upon filing a petition for bankruptcy, an automatic stay applies to the commencement or continuation of a judicial action "against the debtor." Under this section, then, a claim by the debtor is not affected by the automatic stay and may proceed. See, e.g., Aiello v. Providian Fin. Corp., 239 F.3d 876, 880 (7th Cir. 2001); Victor Foods, Inc. v. Crossroads Econ. Dev. St. Charles County, Inc., 977 F.2d 1224, 1227 (8th Cir. 1992); Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989).

However, the identity of the party who filed the complaint is not dispositive of whether the case involves an action or proceeding by the debtor. Parker v. Bain, 68 F.3d 1131, 1137 (9th Cir. 1995). Rather, within a single case, some claims may be stayed, while others are not. Id. The Court must examine the particular claims, counterclaims, cross claims and third-party claims independently to determine which claims are subject to the bankruptcy stay. Id. A claim is by the debtor if "its successful prosecution would inure to the benefit of the bankruptcy estate." Id. at 1138.

Even if a suit by a debtor is not stayed under § 362(a)(1), at least one court has held that a motion to dismiss a suit initiated by the debtor is barred by the automatic stay under § 362(a)(3). That section prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." See In re Gen. Assoc. Investors Ltd. P'ship, 159 B.R. 551, 554-56 (Bankr. D. Ariz. 1993). However, other courts have rejected this view. See In re White, 186 B.R. 700, 707 (9th Cir. BAP 1995) ("It is most unlikely that a contention by a defendant that the trustee's claim is

unfounded can be equated with exercising dominion or control over property of the estate.").

This suit was initiated by Parra as a named Plaintiff, and OneWest asserts no counterclaims. OneWest moved for summary judgment prior to the bankruptcy, but even if it had filed the motion afterwards, the mere act of filing the motion would not have violated the stay and thus OneWest would not have been subject to sanctions for violating the stay. Because all the claims here were initiated by the debtor, not against the debtor, the automatic stay does not apply and the Court may adjudicate the motion for summary judgment as to Parra.

**D. Escobar**

Plaintiffs state that OneWest has offered Escobar a modification which he has accepted, and therefore Escobar's claims in this litigation are satisfied.

**E. Forouzmand, Garcia, and Parra**

1. Loan Origination Claims, Counts One, Three, and Eight

Count one of Plaintiffs' Complaint seeks declaratory relief that OneWest (via Indymac) violated truth in lending laws by failing to make certain disclosures when the loans were originated. The first part of Count three alleges OneWest breached the loan contracts by failing to disclose required information. Count eight alleges OneWest violated Nevada state law by failing to use commercially reasonable means to determine Plaintiffs had the ability to repay the loans.

OneWest argues it is entitled to summary judgment on these claims because no issue of fact remains that it did not originate the loans in question, and that it did not assume any liabilities arising out of the origination of the loans when it purchased the loans from FDIC/Indymac Federal. OneWest contends Plaintiffs' sole remedy is to pursue the claims process before the FDIC, as provided by the Court in the prior action by Plaintiffs in this Court.

OneWest further argues that it cannot be liable for any misrepresentations related to the loans or failures to disclose because it did not make any such representations, did not originate the loans, and, in any event, TILA has a one year statute of limitations. OneWest further argues that even if Nevada Revised Statutes § 598D applied, OneWest is not a "lender" under that statute as to Parra and Garcia because OneWest is only a servicer of those loans. As to Forouzmand, OneWest contends § 598D does not apply because it never "made" a loan to her. OneWest also argues Garcia and Forouzmand testified their loan applications contained false information, and therefore they must be estopped from pursuing breach of contract claims. Finally, OneWest argues Plaintiffs allege their mortgage payments nearly doubled, but in reality none have, and Garcia does not even have an ARM.

Plaintiffs respond that under Nevada law, they may sue a successor lender for the originator's statutory violations, and the successor lender then may pursue the original lender for relief. Specifically, Plaintiffs contend that § 598D shifts the originating lender's liability to any subsequent lender, and permits the subsequent lender to recover damages from the originator. Plaintiffs thus contend they may pursue OneWest, and OneWest then may make a claim with FDIC. Plaintiffs further contend the contracts between FDIC and OneWest are void to the extent they conflict with Nevada law as reflected in § 598D. Plaintiffs do not respond to most of OneWest's other arguments.

Pursuant to its powers as conservator under the FIRREA, the FDIC succeeds to "all rights, titles, powers, and privileges" of the failed institution, pays the failed institution's valid obligations, and may "transfer any asset or liability" of the failed institution. 12 U.S.C. §§ 1821(d)(2)(A), (H), (G)(i)(II). Courts uniformly have held that an entity that purchases an asset of a failed institution from FDIC "is not liable for the conduct of the receiver or [failed] institution unless the liability is transferred and assumed." Kennedy v. Mainland Sav. Ass'n, 41 F.3d 986, 990-91 (5th Cir. 1994); see also Yeomalakis

v. F.D.I.C., 562 F.3d 56, 60 (1st Cir. 2009) (FDIC, not subsequent asset purchaser, is successor to failed institutions liabilities FDIC); Payne v. Sec. Sav. & Loan Ass'n, F.A., 924 F.2d 109, 111 (7th Cir. 1991) (same). The FDIC, acting as conservator, may sell assets while retaining related liabilities, which are resolved through the statutory claims resolution process. Kennedy, 41 F.3d at 991; 12 U.S.C. § 1821(d)(5). "This design facilitates the sale of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the [FDIC] to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations." Payne, 924 F.2d at 111. FDIC's powers and obligations under FIRREA trump conflicting state law. F.D.I.C. v. Bank of Boulder, 911 F.2d 1466, 1473-74 (10th Cir. 1990) (holding federal statutory law preempts contradictory state law and allows transfer of property from FDIC where such property normally would be nontransferable under state law).

Plaintiffs cite no authority for the proposition that Nevada law trumps the terms of a contract entered into by FDIC pursuant to its powers under federal law. The Supremacy Clause and conflict preemption would preclude such a result. Permitting various state laws to impact the sale of assets FDIC obtains through a conservatorship would undermine the FIRREA statutory scheme. Thus, even if NRS § 598D would provide that ordinarily a subsequent lender is liable to a borrower for the originating lender's statutory or contractual violations, such a liability would not extend to a purchaser of a failed institution's assets unless the liability expressly was assumed in the purchase agreement.

The purchase agreements at issue here provide that liabilities are assumed only if expressly listed in the various schedules or if the liabilities are added by the FDIC within 60 days or by mutual agreement of FDIC and OneWest after sixty days. Plaintiffs' claims are not in the schedules, and there is no evidence the liabilities were assumed either by FDIC notice within 60 days or by mutual agreement thereafter. Therefore, the liability remained

1  with FDIC and Plaintiffs' sole remedy lies with FDIC.  Plaintiffs' complaints that they

2  already sought relief from FDIC and that their claims were denied, does not somehow

3  transfer the liability to OneWest.

4        Moreover, Plaintiffs' reading of § 598D is strained.  Section 598D.120 states:

> 1. If an action has been filed in a court of competent jurisdiction claiming an unfair lending practice in connection with a home loan, the lender who holds the home loan may sell the home loan and recover damages and costs as provided in this section if the lender did not:
>     (a) Originate the home loan; and
>     (b) Willfully engage in any unfair lending practice described in this chapter in connection with the home loan.
> 2. The lender described in subsection 1 may require the person from whom the lender purchased the home loan described in subsection 1 to:
>     (a) Repurchase the home loan for the amount the lender paid for the home loan; and
>     (b) Pay to the lender all damages and reasonable costs incurred by the lender that are related to:
>         (1) The purchase of the home loan by the lender from the person;
>         (2) Any damages awarded in the action described in subsection 1;
>         (3) Any costs related to the action described in subsection 1;
>         (4) The repurchase of the home loan by the lender if the lender was required to repurchase the home loan from another lender pursuant to this section; and
>         (5) The repurchase of the home loan from the lender by the person pursuant to this section.

Plaintiffs contend that because a subsequent lender may pursue claims against the original lender, this establishes the borrower may sue the subsequent lender for the original lender's unfair lending practices.  The Court disagrees.  Under § 598D.100, most types of unfair lending practices do not require mens rea.  For example, it is an unfair lending practice for a lender to finance credit insurance.  However, the particular unfair practice Plaintiffs allege here is the knowing or intentional making of a home loan without using reasonable commercial means to determine the borrower's ability to repay.  The Court rejects the argument that a borrower could sue a subsequent lender for the originator's knowing and intentional misconduct.  Regardless OneWest has not assumed the liabilities arising out of Indymac's alleged misconduct.

10

All the origination claims arise from Indymac's conduct, and OneWest did not assume those liabilities in its purchase from FDIC. The Court therefore finds it appropriate to grant OneWest's motion for summary judgment on all the origination claims.

### 2. Servicing Based Claims - Counts Two, Three, Four, and Six

Count two alleges that as a result of OneWest's failure to respond to financial hardship letters, Plaintiffs' homes are about to be foreclosed upon. The second part of Count three alleges OneWest breached the loan agreements by failing to respond to Plaintiffs' requests for mortgage payment assistance within 30 days. Count four alleges OneWest breached the covenant of good faith and fair dealing by refusing to negotiate in good faith when Plaintiffs requested mortgage payment assistance, and by failing to provide information when Plaintiffs requested information regarding their Deeds. Count six states that Plaintiffs have written to OneWest to complaint about the accounting and servicing of their loans and have requested information but OneWest has refused to respond or provide an updated accounting.

As to the failure to respond to requests for assistance, OneWest argues that Plaintiffs have failed to establish any loan document requires such a response within 30 days. OneWest contends that, in any event, it has responded to requests for modification. It offered a modification to Forouzmand and Parra but they rejected them. As for Garcia, it is not clear she has even requested a loan modification. OneWest contends Plaintiffs are trying to amend their Complaint to add claims under the Home Affordable Mortgage Program ("HAMP") which are not pled in the Complaint. OneWest argues that even under HAMP, Plaintiffs are not parties to the HAMP contract between OneWest and the government, nor are they third party beneficiaries, and thus OneWest is entitled to summary judgment. As to the covenant of good faith and fair dealing, OneWest argues it does not breach the covenant by refusing to negotiate because the covenant does not require it to undertake obligations it did not agree to contractually. As to inspection and accounting,

11

OneWest argues there is no such common law cause of action.

Plaintiffs respond that they have alleged OneWest has failed to negotiate as required under the contracts, but that adjudication of this claim is premature because Garcia and Forouzmand have submitted loan modification applications to OneWest and both are awaiting a response. Plaintiffs also argue the HAMP contract requires OneWest to consider for loan modification any minimally eligible loan it services. Plaintiffs contend that "upon information and belief," Forouzmand and Garcia meet the eligibility requirements. (Opp'n at 22.) Plaintiffs contend they are third party beneficiaries of the HAMP contract. As to the inspection and accounting count, Plaintiffs contend that the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g, requires a creditor to supply a party with a validation of a debt if requested. Additionally, as discussed more fully below, Garcia countermoves for judicial review, claiming that OneWest failed to attend a required mediation under Nevada law.

Plaintiffs identify nothing in the actual loan documents which requires OneWest to consider loan modification within 30 days of a request for mortgage payment assistance. Neither the Complaint nor the Amended Complaint mention HAMP. Both refer to a provision in the "loan documents" which would require this consideration. OneWest therefore is entitled to summary judgment on the breach of contract and breach of covenant of good faith and fair dealing claims as pled. No contract term in the loans required OneWest to engage in loan modification, and it would not breach the covenant for OneWest to refuse to take on an additional obligation it was not required to undertake in the contract itself.

Even if the Court permitted Plaintiffs to essentially amend via their opposition to state a HAMP claim, OneWest is entitled to summary judgment. Plaintiffs' contention that they are third party beneficiaries of the HAMP contract between OneWest and Fannie Mae is incorrect.

The HAMP contract states that it is governed by federal law. (Opp'n, Ex. 5 at 9.)

Under federal law, "[b]efore a third party can recover under a contract, it must show that the contract was made for its direct benefit-that it is an intended beneficiary of the contract." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999). "Demonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task." County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1244 (9th Cir. 2009). Generally, third parties who benefit from a government contract are "assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary." Id. (citations, quotation, emphasis omitted). A plaintiff does not show clear intent "by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with [them] 'in mind." Id. (quotations, citations, alterations omitted). Instead, the contract's precise language must demonstrate a clear intent to rebut the presumption that the plaintiff is an incidental beneficiary. Id.

Plaintiffs have not identified anything in the HAMP contract which clearly expresses a promissory intent to benefit borrowers. Rather, the HAMP contract contains a provision stating that the "Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." (Opp'n, Ex. 5 at 10.) The Agreement nowhere states that it gives borrowers any rights or otherwise expressly intends to confer third party beneficiary status on borrowers. As OneWest points out, even Fannie Mae, which has rights under the contract, cannot force OneWest to make any particular loan modification. It can take other steps against OneWest, including terminating the HAMP agreement, but it cannot impose a modification. (Id. at 6-7.) Thus, a borrower could not require OneWest to make any particular loan modification under the HAMP contract either. Although the overall HAMP program undoubtedly has a goal of assisting homeowners, the HAMP contract does not express any intent to grant borrowers a right to

enforce the HAMP contract between the government and the loan servicer.

Moreover, Plaintiffs have not presented any evidence that OneWest actually violated the HAMP contract. Plaintiffs have not presented evidence that any one of them was eligible for modification but was denied in some way that would violate the contract.

As to the "inspection and accounting" claim, Plaintiffs now contend this is proper relief under the Fair Debt Collections Practices Act. Plaintiffs, however, did not indicate that in their Amended Complaint. Regardless, Plaintiffs have not presented any evidence they requested information on their accounts and OneWest thereafter failed to provide it. OneWest is entitled to summary judgment on this claim.

### 3. Foreclosure Based Claims - Counts Five and Seven

Count five alleges OneWest wrongfully foreclosed without providing proper notice. Count seven alleges the wrongful foreclosures have slandered title to Plaintiffs' properties. Plaintiffs concede these claims do not apply to Forouzmand, Garcia, or Parra and summary judgment on these claims is appropriate as to these Plaintiffs.

### 4. Garcia's Request for Judicial Review

Garcia contends that under Nevada Revised Statutes § 107 as recently amended, a borrower living in an owner-occupied house may request a mediation to seek a loan modification. If any party fails to mediate in good faith, the mediator may recommend sanctions, including judicial review of the loan and monetary sanctions. Plaintiffs claims Garcia scheduled a mediation for December 14, 2009. Garcia contends that although OneWest properly was noticed, it did not attend the mediation. Garcia requests as a sanction judicial review of the loan. Garcia requests the loan be modified to be a 30 year fixed term at 2% principal and interest upon the fair market value of the property and that the fair market value is $120,000, resulting in a total payment of $618.14 per month. Garcia also requests attorney fees and costs as sanctions. OneWest responds that Garcia never made OneWest aware of the scheduled mediation, and any mediation was improper

14

given the parties' Stipulation which prevents any foreclosure from proceeding until resolution of class certification.

Under NRS § 107 as amended by AB 149 (2009), a lender cannot foreclose on owner-occupied property without first giving the borrower a chance to engage in mediation. If the borrower elects mediation, the lender cannot sell the property until mediation is completed. If the lender does not attend the mediation, "the mediator shall prepare and submit to the Mediation Administrator a petition and recommendation concerning the imposition of sanctions against the beneficiary of the deed of trust or his representative. The court may issue an order imposing such sanctions against the beneficiary of the deed of trust or his representative as the court determines appropriate, including, without limitation, requiring a loan modification in the manner determined proper by the court." The mediation program is administered by the Nevada Supreme Court.

Plaintiffs claim OneWest was notified of the mediation but they provide no evidence to that effect. OneWest contends it was not notified of the mediation. In this case, the parties stipulated that OneWest would not proceed with any foreclosure or eviction proceedings until after this Court decides the motion for class certification (Doc. #28). The parties agreed Plaintiffs would apply for loan modifications pursuant to HAMP, and if the HAMP modifications were denied, the parties then would mediate. (Reply, Decl. of Zipprich at 2.) Consequently, it is unclear why Plaintiff Garcia set a mediation in the first place. After the mediation, Garcia then applied for a loan modification with OneWest. To the extent Garcia could even pursue this in federal court, as opposed to state court, it lies within the Court's discretion whether to sanction a lender's failure to appear at a mediation, and if so, whether to impose a loan modification. The Court finds that under the circumstances presented there is no basis to sanction, and no reason to impose the loan modification terms Garcia requests.

///

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. #53) is **GRANTED** and judgment is hereby entered in favor of Defendants and against Plaintiffs' Cesar Covelli Sr., Perry Escobar, Firouzeh Forouzmand, Marlen Garcia, and Maria Parra.  The Clerk of Court shall forthwith enter judgment accordingly.

DATED:  May 21, 2010.

*[signature]*

PHILIP M. PRO
United States District Judge